IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WORTH COLLECTION, LTD.,<br>    Debtor | Chapter 7<br>Case No. 20-10337 (BLS) |
| DOUGLAS T. TABACHNIK, in his capacity as the Chapter 7 Trustee of the bankruptcy estate of The Worth Collection, Ltd.,<br><br>        Plaintiff,<br>    v.<br><br>CATTERTON MANAGEMENT COMPANY, L.L.C., *et al.*,<br><br>        Defendants. | Adv. Pro. No. 23-50315 (BLS)<br>D.I.'s 74, 75, 76, 77, 83, 86, 87 |

**MEMORANDUM OPINION DENYING**
**DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT**[1]

Douglas T. Tabachnik, in his capacity as the Chapter 7 Trustee of the Worth Collection, Ltd., filed this adversary proceeding against Catterton Management Company, L.L.C., other entities, and nine individuals.[2] After the Court granted the Defendants' motion to dismiss Counts I, II and III of the original complaint,[3] the

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and § 1334(b). These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(H) and (O). Venue is proper in this district under 28 U.S.C. § 1409(a).

[2] The Defendants in this adversary proceeding are Catterton Management Company, L.L.C. ("Catterton"); Catterton Managing Partner V, LLC ("CMPV"); The Worth Collections Holdings, LLC ("Holdings"); Worth Acquisition, LLC ("Acquisition"); and the following individuals: Caroline Davis, Jay Rosenberg, David DeFeo, Seth Grossman, Diana Manley, Wendy Selig-Prieb, Courtney Denby, Andrea Weiss, Lamira Fondren (the "Individual Defendants").

[3] Adv. Docket Nos. 61, 62 (the "Prior Dismissal Opinion"). The Opinion and Order allowed the Trustee to file an amended complaint.

Trustee filed an Amended Complaint.[4]  Before the Court are two motions to dismiss the Amended Complaint: one filed by Catterton[5] and one filed by the Davis Group Defendants.[6]  For the reasons set forth below, the Court will deny the Defendants' Motions to Dismiss the Amended Complaint.

BACKGROUND

This Chapter 7 case was commenced by the filing of an involuntary petition on February 14, 2020, against The Worth Collection, Ltd. (the "Debtor").  The petitioning creditors were inventory suppliers or service providers to the Debtor's retail clothing sale business.  On October 23, 2020, about eight months after the filing of the voluntary petition, the putative debtor filed an answer.[7]  Another five months passed before the entry of an order for relief on March 24, 2021.[8]  Three months later, on June 9, 2021, Douglas Tabachnik was elected by the creditors to serve as the Chapter 7 Trustee.[9]

The Trustee filed several adversary proceedings asserting claims arising out of a series of leveraged buy-out transactions undertaken by the Debtor and related entities in September 2016 (the "LBO Transaction").  A description of the factual allegations regarding the LBO Transaction was included in the Prior Dismissal

---

[4] The Amended Complaint is filed at Adv. Docket No. 69.
[5] Catterton's Motion to Dismiss the Amended Complaint is filed at Adversary Docket Nos. 74, 75.
[6] The Davis Group Defendants consist of Caroline Davis, David DeFeo, Courtney Denby, Lamira Fondren, Seth Grossman, Diane Manley, Jay Rosenberg and Wendy Selig-Prieb.  Their Motion to Dismiss the Amended Complaint is filed at Adversary Docket Nos. 76, 77.
[7] Main Case Docket No. 40. The docket indicates that there were no fewer than fifteen stipulations extending the time for the putative Debtor to answer or otherwise respond to the involuntary petition.
[8] Main Case Docket No. 53.
[9] Main Case Docket No. 87.

Opinion. The Court assumes the parties are familiar with the allegations in the Amended Complaint and thus will not repeat them here except to the extent necessary for the Court's ruling today.

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the Court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and must determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[10] "Without a sufficient factual predicate, a complaint supported merely through the formulaic recitation of the [statutory] factors and conclusory allegations will not survive a motion to dismiss."[11]

The Supreme Court has instructed that a pleading must nudge claims "across the line from conceivable to plausible."[12] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] The determination is a context specific task, drawing on the reviewing court's judicial experience and common sense."[14]

---

[10] *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 879 F.3d 79, 83 n.6 (3d Cir. 2018).
[11] *Miller v. Easy Star Records (In re DA Liquidating Corp.)*, 622 B.R. 172, 176 (Bankr. D. Del. 2020) (citing *In re Liquid Holdings Grp., Inc.*, No. 16-10202 (KG), 2018 WL 6841351, *3 (Bankr. D. Del. Nov. 14, 2018)).
[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[13] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).
[14] *Ashcroft*, 556 U.S. at 679.


## DISCUSSION

1.    <u>Counts I, II and III.</u>

The Prior Dismissal Opinion determined that the Complaint did not include sufficient detailed factual allegations to support the claims asserted in the first three counts of the Complaint. The Amended Complaint corrects the deficiency by adding specific factual allegations to support the claims for Count I (substantive consolidation of the Worth Entities[15]),[16] Count II (piercing the corporate veil among the Worth Entities),[17] and Count III (collapsing the transactions association with the LBO Transaction).[18] "In deciding whether to 'collapse' a series of transaction into one integrated transaction, the issue is not whether there was common ownership on both sides of the transaction or whether the transfer was a stock or an asset sale, but rather whether there was an overall scheme to defraud the estate and its creditors by depleting all the assets through the use of a leveraged buyout."[19]

The cumulative effect of the added factual details in the Amended Complaint, together with factual allegations in the original complaint, now provides a basis to support the claims in Counts I, II and III. The Court concludes that the combined

---

[15] The "Worth Entities" are defined in the Amended Complaint as including the Debtor plus three entities formed by New Water Capital Partners, L.P. ("New Water") allegedly for the sole purpose of consummating the LBO Transaction: (i) NWC Worth Collection Holdings, LLC ("NWCWCH"); (ii) Worth Investment Holdings, LLC ("WIH"); and (iii) Worth Collection Intermediate Holdings, LLC ("Worth Intermediate"). Amended Complaint, ¶ 120.
[16] *See, e.g.,* Amended Complaint ¶¶ 137-146; ¶¶ 224–226.
[17] *See, e.g.,* Amended Complaint ¶¶ 236-237; ¶¶ 241-242.
[18] *See, e.g.,* Amended Complaint ¶¶ 86-192.
[19] *Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC)*, 321 B.R. 128, 138 (Bankr. D. Del. 2005).

old and new allegations now provide sufficient facts to nudge the claims over the line to plausible.

2. <u>Counts IV and V.</u>

Counts IV and V of the Amended Complaint seek the avoidance and recovery of the Closing Distributions[20] as fraudulent transfers pursuant to Bankruptcy Code § 544 and Delaware Uniform Fraudulent Transfers Act, 6 Del. C. § 1304 and § 1305.

The Defendants argue for dismissal of Counts IV and V because the Closing Distributions were not made by the Debtor and did not transfer property belonging to the Debtor.  The Trustee argues in response that success on the first three Counts of the Amended Complaint will provide the basis for the allegations that the Closing Distributions transferred the Debtor's assets to the Defendants (including Catterton, who was a subsequent transferee of Acquisition).[21]  When considered along with the first three Counts, and drawing all inferences in the light most favorable to the Plaintiff, the Amended Complaint provides sufficient factual allegations to support the Trustee's claim that the Closing Distributions transferred the Debtor's property.

a. <u>Claims for avoidance of transfers made with actual intent to defraud</u>

Delaware law provides for avoidance of a transfer made or obligation incurred with "actual intent to hinder, delay or defraud any creditor of the debtor."[22]  Because direct evidence of intent is typically unavailable, plaintiffs may

---

[20] The Closing Distributions are defined in the Amended Complaint ¶ 110.
[21] Amended Complaint, ¶¶ 111-113; ¶ 154.
[22] 6 Del. C. § 1304(a)(1) and (b), § 1307(a).

5

demonstrate intent circumstantially with "badges of fraud."[23] "Badges of fraud are 'circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.'"[24]

The Delaware statute provides examples of the badges of fraud that a court may consider:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer was undisclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[25]

Case law teaches that the presence or absence of any single badge of fraud is not conclusive.[26] The analysis is not a check-the-box inquiry, and a court may consider other factors relevant to the alleged fraudulent transaction.[27] Moreover, in bankruptcy, the heightened pleading standard of Fed.R.Civ.P. 9(b) may be relaxed

---

[23] *SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, 2016 WL 1165634, *4 (Bankr. D. Del. 2016) (citing *Off'l Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 545 (Bankr. D. Del. 2009)).
[24] *Id.* (quoting *Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005)).
[25] 6 Del. C. § 1304(b).
[26] *Syntax-Brillian*, 2016 WL 1165634 at *5.
[27] *Id.*

6

and interpreted liberally where a trustee, or a trust formed for the benefit of creditors, is asserting the fraudulent transfer claims.[28]

The Trustee contends that the Amended Complaint includes factual allegations that describe the following badges of fraud:

- the Closing Distributions were transferred to insiders (*i.e.*, the Debtor's former equity holders, who were controlling shareholders, officers, and directors of the Debtor);[29]

- the Debtor did not receive value that was reasonably equivalent to the value of the Closing Distributions or the obligations incurred by the Debtor;[30] and

- the Debtor became insolvent shortly after the transfer was made or the obligation was incurred.[31]

The Defendants argue that the Amended Complaint's allegations continue to be conclusory and general and cannot support a claim to avoid transfers based on actual fraud. However, the Amended Complaint contains specific factual allegations that support the Trustee's overall claim that the Worth Entities participated in the LBO Transaction knowing that it would leave the Debtor with so much debt that it would harm the Debtor's ability to pay unsecured creditors. For example, the Amended Complaint alleges that the LBO Transaction harmed the Debtor's financial condition, stating:

---

[28] *Syntax-Brillian*, 2016 WL 1165634 at *4 (citing *Fedders N. Am.*, 405 B.R. at 544).
[29] Amended Complaint, ¶¶111-112; 194; 197(b) and (c);
[30] Amended Complaint, ¶¶ 103; 177-185; 193-198
[31] *Id.*

7

- Prior to the LBO Transaction, the Debtor had total indebtedness in the amount of $2,373,966.22.[32]
- Upon the closing of the LBO Transaction, the Debtor was obligated for over $25,000,000 in debt.[33]
- In the year ending December 31, 2014, the Debtor incurred $77,000 in interest and financial related expenses and had net sales of $76,581,000 and a positive net income of $1,686,000.[34]
- In the year ending December 31, 2015, the Debtor incurred $23,000 in interest and financial related expenses and had net sales of $78,507,000 and a positive net income of $1,398,000.[35]
- The staggering debt resulting from the LBO Transaction caused the Debtor's interest and financing related expenses to skyrocket to $1,760,000 in 2016 – an over five thousand percent (5,000%) increase from the prior year, despite closing of the LBO Transaction occurring after approximately nine of the twelve months in that calendar year.[36]
- The Debtor operated at a net loss of $1,610,000 in 2016.[37]
- In 2017 the Debtor's interest and financing related expenses increased to $2,483,000.[38]
- The Debtor operated at a net loss of $9,317,000 in 2017, the first calendar year after the LBO Transaction.[39]
- The Debtor had approximately $12 million in cash and cash equivalents at the end of 2014.[40]
- Th Debtor had almost $5 million in cash and cash equivalents at the end of 2015.[41]
- The Debtor's cash dwindled to $445,000 in cash and cash equivalents at the end of 2016.[42]
- The Debtor's cash position at the end of 2017 was lower than its cash position at the end of 2016.[43]

---

[32] Amended Compl. ¶ 177.
[33] Amended Compl. ¶ 180.
[34] Amended Compl. ¶ 178.
[35] Amended Compl. ¶ 179.
[36] Amended Compl. ¶ 182.
[37] Amended Compl. ¶ 183.
[38] Amended Compl. ¶ 184.
[39] Amended Compl. ¶ 185.
[40] Amended Compl. ¶ 186.
[41] Amended Compl. ¶ 187.
[42] Amended Compl. ¶ 188.
[43] Amended Compl. ¶ 189.

- The LBO Transaction amounted to a windfall payout to the Debtor's Former Equity Holders, with the Debtor picking up the tab in the form of $25 million in debt and leaving the Debtor's creditors at risk, maintaining a bleak amount of operating cash in relation to its significant post-LBO Transaction debt obligations, and pledging all of its assets as security for the newly-incurred debt.[44]
- As part of the LBO Transaction, the Debtor granted blanket security interests to Monroe and First Niagara and left the Debtor with over $25 million in debt, while the only cognizable benefits that the Debtor received in exchange were (i) satisfaction of $2,373,966.22 of prior debt and (ii) a cash infusion of $1,058,178.92[45]

The Court concludes that the Amended Complaint contains sufficient factual allegations related to badges of fraud to prevent dismissal of the Trustee's claim. The Motion to Dismiss the actual fraud claims in Count IV will be denied.

b. <u>Claims for avoidance of transfers made with constructive intent to defraud</u>

The Trustee's claims in Counts IV and V also seek to avoid transfers made with constructive intent to defraud creditors. Section 1304(a)(2) of the Delaware Fraudulent Transfer law provides that a transfer made or obligation incurred by a debtor is fraudulent if the debtor made the transfer or incurred the obligation:

> Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> a. Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[46]

---

[44] Amended Compl. ¶ 191.
[45] Amended Compl. ¶ 197(a).
[46] 6 Del. C. § 1304(a)(2).

9

Section 1305(a) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.[47]

Claims of constructive fraud are not subject to the particularity requirement of Fed.R.Civ.P. 9(b) but, instead, are evaluated under the notice pleading requirement of Fed.R.Civ.P. 8(a)(2).[48] "The Trustee must do more than simply recite statutory elements, but he need only state facts with sufficient particularity to provide the defendant fair notice of the charges against him."[49]

The Defendants again argue that the allegations in the Amended Complaint about lack of reasonably equivalent value and insolvency are too conclusory or general to support the claims asserted. However, for the reasons described above in the discussion about badges of fraud that would relate to a lack of reasonably equivalent value or insolvency, the Court concludes that the Amended Complaint contains sufficient factual allegations to prevent dismissal of the claims in Counts IV and V related to constructive fraudulent intent.

---

[47] 6 Del. C. § 1305(a).
[48] *Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*, 582 B.R. 846, 856 (Bankr. D. Del. 2018).
[49] *Id.* (citing *Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 BR. 488, 495 (Bankr. D. Del. 2010)).

3. <u>The safe harbor of § 546(e)</u>

The Defendants seek dismissal of Counts IV and V claiming that the transfers at issue are protected from avoidance by the safe harbor in Bankruptcy Code § 546(e), which provides in relevant part:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B) and 548(b) of this title, **the trustee may not avoid ... a transfer made by or to (or for the benefit of) a ... financial institution, [or] financial participant ... in connection with a securities contract,** as defined in section 741(7), ... **that is made before the commencement of the case,** except under section 548(a)(1)(A).[50]

The safe harbor of § 546(e) applies when two requirements are met: "(1) there is a *qualifying transaction* (i.e., there is a 'settlement payment' or a transfer payment . . . made in connection with a securities contract), and (2) there is a *qualifying participant* (i.e., the transfer was 'made by or to (or for the benefit of) a … financial institution, [or financial participant]')."[51]

The Defendants argue that the Closing Distributions are qualifying transactions because they were "settlement payments" made in connection with a "securities contract" (*i.e.*, the Stock Purchase Agreement).[52] Further, the Defendants also argue that the Closing Distributions were made by or to a qualifying participant because the transfers were made by a "financial institution," which is defined by the Bankruptcy Code as including *customers* of a Federal

---

[50] 11 U.S.C. § 546(e) (emphasis added).
[51] *SunEdison Litig. Trust v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505, 513 (Bankr. S.D.N.Y. 2020) (quoting *In re Nine West LBO Sec. Litig.*, 482 F.Supp.3d 187, 197 (S.D.N.Y. 2020), *aff'd in part, vacated in part,* 87 F.4th 130 (2d Cir. 2023)).
[52] The Stock Purchase Agreement is defined in the Amended Complaint ¶ 87.

11

Reserve bank, when that bank is acting as an agent or custodian for the customer.[53] In particular, the Defendants argue that the Worth Entities were customers of a bank because the Stock Purchase Agreement provided for a Federal Reserve bank to act as an escrow agent regarding the Purchase Price Adjustment Escrow Amount and the Indemnification Escrow Amount (as those terms are defined in the Stock Purchase Agreement).[54] The Defendants rely on the decision in the *Tribune Company Fraudulent Conveyance Litigation*, in which the Second Circuit Court of Appeals determined that Tribune was a "financial institution" when analyzing the § 546(e) safe harbor defense because it was the customer of a financial institution (Computershare), which acted as a depository and agent for Tribune.[55]

The Trustee disputes the Defendants' assertion that the transfers at issue involved a qualifying participant, *i.e.*, a financial institution. The Trustee asserts that "[p]ursuant to the overarching LBO Transaction, Holdings and Debtor sold Debtor's stock and the Debtor took on $25 million in obligations while the Debtor's Former Equity Holders were paid over $39 million in proceeds from the sale."[56] In other words, the Trustee seeks to avoid the Closing Distributions that were transferred from the Worth Entities (including the Debtor) to the Debtor's Former Equity Holders and the Subsequent Transferees. Relying on the Supreme Court's

---

[53] Bankruptcy Code § 101(22) defines the term "financial institution" in relevant part as "a Federal reserve bank … and when any such Federal reserve bank … is acting as agent or custodian for a customer … in connection with a securities contract … such customer."
[54] Stock Purchase Agreement, §2.3(d).
[55] *See In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 77-79 (2d Cir. 2019).
[56] Trustee's Mem. Of Law at 44 (Adv. Docket No. 83) citing Amended Compl. ¶ 111.

12

opinion in *Merit Management*[57] and an opinion of this Court in *Live Well*,[58] the Trustee argues that the use of conduit financial institutions to effectuate the Closing Distributions is irrelevant to a § 546(e) analysis.

Section 546(e) is an affirmative defense[59] and generally an affirmative defense will not form the basis for dismissal under Rule 12(b)(6).[60] The issues raised by the parties in connection with the Defendants' § 546(e) safe harbor defense cannot be determined from the allegations in the Amended Complaint. Even assuming (without deciding) that there is a qualifying transaction here, it would be inappropriate at this stage for the Court to determine whether the Closing Distributions were made by, to or for the benefit of a qualifying participant. More facts are needed to determine whether any entities involved in the Closing Distributions qualify as "customers" of a bank, particularly whether a bank was acting as an agent or custodian for the customer.[61] The Motions to Dismiss Counts IV and V based on the safe harbor defense will be denied.

---

[57] *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 138 S.Ct. 883, 200 L.Ed.2d 183 (2018).

[58] *Carickhoff v. Cantor (In re Live Well Fin., Inc.)*, 2023 WL 3995900, *14 (Bankr. D. Del. June 13, 2023).

[59] *In re Nine West LBO Securities Litig.*, 87 F.4th 130, 144 (2d Cir. 2023).

[60] *Burtch v. Opus, L.L.C. (In re Opus East, L.L.C.)*, 480 B.R. 562, 572 (Bankr. D. Del. 2012). There are some situations when an affirmative defense can provide the basis for dismissal under Rule 12(b)(6), such as when the affirmative defense is clear on the face of the complaint. *Nine West LBO Securities Litig.*, 87 F.4th at 142-43; *Hurwitz v. Mahoney (In re Space Case)*, 2024 WL 1628440, *6 (Bankr. D. Del. Apr. 12, 2024) (citing *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005)). This is not the case here.

[61] *See Nine West LBO Securities Litig.*, 87 F.4th 130; *Buchwald Capital Advisors, LLC v. Papas (In re Greektown Holdings, LLC)*, 621 B.R. 797 (Bankr. E.D. Mich. 2020).

13

CONCLUSION

For the reasons set forth above, the Motions to Dismiss the Amended Complaint filed by Catterton and the Davis Group Defendants will be denied. An appropriate Order will issue.

FOR THE COURT:

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

Dated: February 24, 2026